

UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA WASHINGTON, D.C.

|  |  |
|---|---|
| MARGARET E. DESCHAMPS ) | |
| ) | |
| ) | |
| ) | *08- 347 RBW* |
| ) | |
| Plaintiff ) | CIVIL ACTION NO.: 0~~1-1484 (CKK~~) |
| ) | Regarding Lightfoot et al v District of Columbia |
| v ) | |
| DISTRICT OF COLUMBIA ) | |
| (DCORM/DCPS) ) | |
| ) | |
| ) | |
| ) | |
| D.C. Mayor Adrian M. Fenty ) | |
| ) | |
| and ) | |
| ) | |
| MICHELLE RHEE, ) | |
| D.C. SCHOOL CHANCELLOR ) | |
| ) | |
| and ) | |
| ) | |
| KELLY VALENTINE ) | |
| Director, D.C. Office of Risk Management ) | |
| ) | |
| and ) | |
| ) | |
| NINA HILL, Claims Adjuster ) | |
| D.C. Office of Risk Management ) | |
| ) | |
| and ) | |
| ) | |
| JOHNNIE WINSLOW, Claims Adjuster ) | |
| D.C. Office of Risk Management ) | |
| ) | |
| and ) | |
| ) | |
| Ms. Mullen, Attorney General Office ) | |
| Washington, DC ) | |
| and ) | |
| ) | |
| Thomas V. McCarron, Attorney ) | |
| Semmes, Bowen & Semmes ) | |
| ) | |

**Plaintiff's Motion Not to Dismiss Plaintiff's Complaint, Plaintiff's Motion amending claim to 1 Million Dollars, and $50,000 for each day Plaintiff did not receive her Back pay monies from DCORM/DCPS, Motion requesting the immediate release of Plaintiffs back pay and front pay monies while the Judge hears the case, Motion requesting that the Judge judicially notes that the Lightfoot v The District of Columbia case is still being heard by Judge Kotelly-Kotar, and Lightfoot Plaintiffs and Defendants Attorneys, and requests that Judge Kotelly-Kotar's holding in the Lightfoot case be applied to Plaintiff's case, Memorandum in Support thereof, and proposed order were served, In case (Civil Action No.01 - 1484) (CKK) .**

## COMPLAINT

**COMES NOW**, the plaintiff, Margaret Deschamps, appearing pro se, and for a complaint against the defendants above names, states, alleges, and avers as follows:

**1.** I would like to make a motion to request an address change to P. O. Box 1350, Clinton, Maryland.

**2.** I would like to make a motion to amend my claim asking for $50,000 to the original amount
That I told DCORM that I would ask for on, January 31, 2006, after I received their termination letter indicating that a Due Process Rights Violation Claim existed on my existed my on workman's compensation claim to 1 Million Dollars. For unnecessary harassment, non-compliance with the Federal Law in the Lightfoot Case, and DC Statute 1-623, I am seeking $50,000 for each day I did not receive my back pay money. My case also involves Human Rights Issues. My human rights have been violated.

**3.** I would like to make a motion to have my Back pay and front pay monies released immediately with my raises, bonuses, and salary ladder increases on my job, while the Judge evaluates my Due Process Rights Violation Claim claim.

4. The Lightfoot v The District of Columbia case is still being heard. ( 339 F. Supp2d 78). Judge Kotelly-Kotar is still hearing the Lightfoot v The District of Columbia case. I needed legal assistance so I called the law firm of Chevalier, and also the DC Employment Justice Center, and I learned they could not assist me because it would represent a conflict of interest. Since the lawyers are still working on setting guidelines for workman's compensation Administrators and for claimants to follow when applying for DC Workman's Compensation..

I have just called the Court today to find out the name of the Judge who would hear my case. I have been just contacted by both Attorneys representing two other defendants. ( approximately 6/29/08) I did not receive the letter that the Lawyer sent requesting a dismissal of my case - Mr. McCarren. He is Ms. Nina Hill's Attorney. However, the Attorney did not let me know that he had requested a dismissal of my case. I just received a copy of Mr. McCarren's request for dismissal of my case by email. I am writing a response to Mr. McCarren's motion that he

2

submitted to you. I am still requesting an injunction against DCORM for terminating my claim without giving me the appropriate 30 days prior notice as specified by the DC City Council, DC Statute 1-623. At the time my claim was terminated Ms. Nina Hill, and Ms. Johnnie Winslow were the Senior Claims Adjuster's on my claim. Ms. Valentine also signed on the document terminating me from receiving further entitlements. I did not receive 30 days prior notice before Ms. Nina Hill and Ms. Winslow terminated me from receiving further entitlements. According to DC Statute 1-623 this represents a Due Process Rights Violation. Judge Walton, DC Statue 1-623 and the Lightfoot case serves as the current law that is used for Workman's Compensation Claims and not the CMPA that Mr. McCarren refers to. The laws are on point and tailored to address the problems of the District of Columbia Claimants applying for Workman's Compensation. Specifically, the manner in which claimants are to be notified regarding their termination is specified by DC Statute 1-623, and the case law found in the Lightfoot case. When one is injured on their job while performing their duties, this does not involve an employee grievance issue. Rather it is strictly an injury issue covered by the Workman's Compensation Statute, found in DC Statute 1-623. DC Statute 1-623 and the Lightfoot case establishes guidelines to be followed by Workman's Compensation Employees who are determining whether the claimants meet the requirements for Workman's Compensation by allowing guidelines in place to assess, evaluate, modify, suspend, accept or terminate the claimant's claim under the DC Workman's Compensation Program. This system allows for Workman's Compensation to be administered fairly to all claimants who apply. DC Statute 1-623 and the Lightfoot case law insures that claimants can't be denied their workman's compensation claims based upon a whim of the Claim's Examiner. DC Statute 1-623 and the case law found in the Lightfoot case does not allow capricious and arbitrary decisions to be rendered in denying the claimants workman's compensation claims.

I am requesting that my claim not be dismissed because DC Statute 1-623, was promulgated by the DC City Council so that Employees of the District of Columbia would have a statute specifying how Workman's Compensation, in the state of the District of Columbia should be administered. Also the DC Statute 1- 623, serves as a guideline for the Workman's Compensation Employees for the processing of employee claims. It also insures that injured employees rights are safeguarded in regards to preventing claimants 5th Amendment Due Process Rights Violations by guaranteeing them at least notice. When employees know the correct procedures to be followed as established by their state's rule making body (DC City Council) they should make every effort to follow them. Therefore, at the very least I should have received 30 days prior notice before terminating my Workman's Compensation claim. I did not receive any notice at all prior to terminating me from further workman's compensation entitlements. Therefore, the Defendants are in non-compliance with DC Statute 1-623, and the 5th Amendment Due Process Clause of the United States Constitution. It should be noted that where claimants have a greater interest in their employment due to being made permanent on their teaching job, the court has held that the plaintiff is entitled to more than just notice. The plaintiff would be entitled to a hearing as well. It should be noted where DCPS Teachers contracts does not state that if a teacher is terminated by the DC Workman's compensation program they will automatically be fired from their position. This is a harsh policy to try to enforce on DCPS teachers. The teachers have been required to have a four (4) year degree, then they must take additional classes before being given permanent status with DCPS. To be allowed to teach Biology in High School a higher requirement is imposed on DCPS teachers. They must have a

3

master's degree in Biology. Since this is so, and the DCPS Employment contact does not state if a teacher is injured while in the performance of their duty on their job, and if the DC Workman's Compensation Program terminates them, they will simultaneously be fired from DCPS Employment. Since this clause was not bargained for in the contract nor stated in the contract, it can't be enforced as part my contractual agreement with DCPS. Once I was reinstated to the Workman's Compensation on 1/13/06, I was officially reinstated with DCPS at that time. I have continued to work for DCPS completing small project for Dr. Janey through July 2006. Since that time I have continued to offer ideas to Mayor Fenty, and Ms. Rhee that might be utilized to make DCPS better for the students and the employees of DCPS. Therefore, while I have been waiting to be called back to work, I have continued to act as if I were still an employee of DCPS.

The District of Columbia has created a State interest in attempting to make sure their injured employees at least have notice through DC Statute 1-623. The District of Columbia recognizes that the minimum procedure to be given to a claimant is notice prior to terminating their workman's compensation claim. Mr. McCarren states the District of Columbia Employees are not covered by other Worker's Compensation laws; rather a comparable system for providing disability benefits has been established under the CMPA. CMPA is not the exclusive remedy for the District of Columbia. The Lightfoot case law establishes parameters for the Claims Examiners in selecting Reliable Medical Evidence. This case states reliable evidence is medical journals, treatises, medical reports and medical articles. Dr. Smithpeter's IME does not fall within these categories even though it is a Medical Report it is missing a page. This report contains a few responses that I did not give the Doctor. Therefore, it is an altered report. I asked Ms. Williamson (Ms. Rhee's Assistant) on approximately June 29th, 2008, if Ms. Rhee could investigate the fact that Dr. Smithpeter's report is a forged report. Ms. Williamson stated that Ms. Rhee is not interested in investigating that at this time and that she agrees with DCORM. If an employee states a document is forged and it is missing a page (an incomplete report) then it is not reliable evidence and can't be used to deny the claimant their Workman's Compensation Entitlements with. No other Federal Agency or State Agency would use an incomplete report or forged report to deny a claimant their workman's compensation entitlement with. This should be disallowed by the Court to allow DCPS to do so as well. This constitutes fraud. Wherein individuals know a document has been altered if the claimant states they did not give those responses to the doctor, and a page is missing as well. It is fraud because an altered document is being used to deny me my entitlements that are due me based upon an injury I received at work.. This should have prompted an investigation. No one cared to investigate it. However, I did ask defendants for a signed medical release which they refused to give me. The Doctor told me I could get a copy of the medical report from him if I could get a signed medical release from my employers or DCORM. Neither one of them gave me a signed a release. Therefore, the decision to deny my claim should be reversed and I should receive all of my back pay and front pay monies at once. I have a doctor's letter which states my injury was caused by the students' attack on me in my classroom on 4/29/03. Dr. Smithpeter's report does not meet the standard of reliable evidence. It also constitutes fraud. Since the report may have been altered with the intent of denying me monies that are due me. My workman's compensation entitlement is regarded as a property interest in my disability benefits. In accordance with Judge Kotelly Kotar's Holding Lightfoot, No.01-1484 -slip opinion, 21. It is my understanding that Judge Kotelly Kotar and DCORM's attorney's and plaintiff's attorneys are still meeting to determine the procedures to be followed concerning Workman's Compensation. The Lightfoot case is still

4

open. The District of Columbia provides a procedurally fair system to insure that claimants Due Process Rights are not violated. I don't know who would have altered the report to read," I go out all of the time". That would have been impossible since I was hospitalized on four different occasions. Further I faxed Dr. Smithpeter's a copy of the report that was given to me and he refused to acknowledge it was even his report. Where a due Process Property Interest can be shown the Court will uphold the claimant's Due Process Rights as in Logan v. Zimmerman, (1982), Cleveland Board of Education v. Laudermill (1985), Morrissey v. Brewer, 408 U. S. 471, 481, 92 Sc. St. 2593, 33 L.ED.2d 484 (1972).

The Court stated in the Lightfoot case that, written standards are the most important and valuable check against the potential for arbitrary administration; they act as bedrock for arbitrary administration; they act as explicit, bedrock guides for the actions of decision makers and ensure that benefit programs are administered in a consistent and transparent manner. The incomplete document used by DCORM to terminate me with does not meet written standards as it does not represent reliable evidence and should not have been used to evaluate and terminate my claim with on 1/25/06. It was disallowed in Judge Carney's Administrative Hearing on approximately 10/05. Once my claim was remanded to DCORM per their request to be allowed to make a final decision on my claim why would it have taken them approximately 60 days to render a decision that, had the Judge ruled on my case he could made a decision that day. It seems that DCORM was not serious about making a final decision on my claim but just attempted to delay paying on my claim for an additional 60 days. This prevented me from receiving the benefits I was entitled to since I had been injured on my job.

Defendant's Attorney stated that, injuries on one's job are a personal issue. If a teacher is intentionally placed in a hazardous duty teaching position- with violent students who administrators had suspended for attempting to harm teachers the previous year or harm other students prior to placing them in the teacher's class, it no longer becomes a personal issue. It is a negligence issue. Especially if the Administrator withdraws their assistance from the teacher in disciplining the students on the teacher's behalf. If a student has pulled a knife out on a teacher in the classroom, or attempts to tackle the teacher in class by ramming into the teacher it is not a personal issue. Especially if the teacher's contract specifies she was hired to teach in the Health Science Program and in the Legal program teaching the talented and gifted students. Then the faculty members decide they want to touch the teacher inappropriately in front of other teachers and her students. This will allow for the teacher's dignity and respect to be eroded by the students and other faculty members. I was told even though I had system wide seniority I did not have building seniority. So other teachers who were not certified to teach High School Biology were given my students to teach, and I was given their schedule to teach - General Science. Even though my Doctor has indicated for 2 years now that I could return to work part-time. I have not been called back. Probably due to my age. DCPS is getting rid of teachers who are in my age bracket. (57.5)

When a teacher is placed intentionally in a hazardous duty teaching environment versus being placed in a safe teaching work environment with the talented and gifted students that I was hired to teach, and the teacher gets hurt the employer should be liable and made to pay for the teacher's injury until she is released from the Doctor's care. To dismiss my case would lead to a miscarriage of justice. The individual/ employer who caused the injury would be allowed to

5

escape correcting the wrong done to the harmed individual. I am asking that justice be applied to my case- commutative, social and positive justice. Also Judge Walton as far as, I am aware my contract with DCPS, does not state that I would be automatically fired from my teaching position if I was injured and DCORM or any other agency terminated me from receiving further workman compensation benefits. Therefore this policy does not apply to me since it was never a part of my contract that was agreed upon by me and DCPS.

More importantly DCORM did not have any new medical information upon which to evaluate my claim with on 1/25/06. Dr. Smithpeter's report was received by DCORM and had been in DCORM's file since 5/05. It was disallowed to be used in Judge Carney's court on approximately 10/05. It never became part of Judge Carney's evidence record. ( ) Therefore, how could this document be used to terminate my claim with. It was never ruled upon as being reliable evidence. Which is what Judge Kotelly Kotar asked DCORM to use in the Lightfoot case. I believe it should be noted according to DC Statute 1-623, the only way that my claim could be re-evaluated after it had just been accepted on 1/13/06, there must have been new medical evidence available at that time, or there must have been a change in my medical condition. Since neither of the things occurred DCORM was non-compliant with DC Statute 1-623, and DCORM's Termination of my claim should be reversed, and my claim should be re-instated immediately with all of my back pay monies and front pay monies released. I should be reinstated to DCPS and all of my service time should be given me without showing a break in my teaching service time.

Also service of process was properly given to Ms. Nina Hill. Ms Jackie Orr, is the Operations Manager for SEDGWICK/DCORM. Ms. Valentine is the Interim Chief Officer of DCORM. Ms. Hill and Ms. Winslow had been involved with training at SEDGWICK, with Ms. Orr. It was my understanding that Ms. Orr handles appeals for individuals appealing decisions from DCORM. She is Ms. Valentine's Supervisor. Ms. Valentine is the Interim Chief Officer of DCORM. At least that was my understanding. When Ms. Hill was at the Appeals office with Ms. Orr, Ms. Orr was her direct Supervisor at that time. If Ms. Orr is in charge of the entire program then she can property sign for Ms. Hill's mail. As Ms. Orr is Ms. Valentine's Supervisor. I just feel this is just a ploy to try to prevent Ms. Hill from taking responsibility as being the Senior Claims Examiner on my Claim with Ms. Winslow. And to stop her from being able to be brought to court on the issue of my Due Process Rights Violation. Claim. She had ample notice of the Due Process Rights Violation Claim since 1/21/06. I tried to reach Ms.Winslow and Ms. Hill concerning getting medical reimbursement monies. However, when I contacted Ms. Hill and Ms. Valentine, I believe after I received my check on 1/25/06 to let them know they must have forgotten to reimburse me. I never heard anything from either of them. I tried contacting Ms. Valentine, Ms. RHEE, Ms. Winslow, and Ms. Hill about my medical reimbursement not one soul contacted me about my reimbursement. I was told around the summer (approximately 5/06) they were involved in training at SEDGWICK. So if Ms. Orr is Ms. Valentine's Supervisor, she could properly sign for the letter for Ms. Hill. It was my understanding that Ms. Hill was working at SEDGWICK for at least 2 days out of the week. I sent Ms. Orr at least 3 appeal letters; perhaps two faxes, and 2 emails. I never received a response of any kind. Except an email response which stated it was an automatic response indicating my communications had been received. She never bothered to call, and I do not recall her sending me one letter. In response to my appeal letter. What's the point of having an appeals

office, when you don't respond to the claimants appeals?  Also Ms. Hill, Ms. Valentine, and Ms. Winslow received a letter from me about the Due Process Rights Violation on 1/21/06.  (   ) I believe the Workman's Compensation Employees just sit and wait for time to pass so that they say your statute of limitations time has passed on your claim.  So they won't have to pay on your claim.  I was told by Ms. Rhee that she thought the time had passed for me to still request payment on my claim.  (   ) I contacted Mayor Fenty, when he took office to let him know about the wrongful termination existing on my claim.  I even contacted Mayor Anthony Williams before he left office.  A Lawyer who was assisting me on my claim, Mr. Jerome Clair contacted Ms. Hill by letter, and I believed he called her as well.  She did not call her to see how my claim could be resolved.  Approximately three weeks had passed and she did not respond to his letter. I contacted the DC City Council to let them know that Ms Hill would not contact my Lawyer so that I could resolve my case.  I let them know that a Due Process Rights Violation existed on my claim.  DC City Council Member Orange went over to talk with someone at the DCORM Office on my behalf, and to get someone to talk with the Lawyer.  Ms Hill did call Mr. Clair then. Nearly 30 days after he contacted her.  She decided to give me a second opportunity to request reconsideration on my claim.  I submitted a notebook explaining why my claim should not have been terminated.  No one responded to this 2nd reconsideration request.  I have my green card indicating that someone signed for the document, I never heard anything about the 2nd reconsideration, nor did she release my check as my Attorney asked her to do at the time since DCORM was in non-compliance to DC Statute 1-623.  I should not have been asked to complete a 2nd reconsideration when a Due Process Right Violation existed on my claim.  DCORM failed to give me 30 days prior notice.  At this point according to Judge Kotelly Kotar my claim should have been reinstated immediately, and I should have received all of my back pay and front pay monies as well as being reinstated on my job.  I have been shown an overall lack of concern for my well being.  I would not have been injured if it had not been for my Administrators at my school.  When I phoned in for assistance to the Workman's Compensation Program and no one returned my phone call for months at a time.  They just ignored me whether I sent them a letter by mail, fax or email.

I feel my case involves not only a 5th Amendment Due Process Rights Violation but also my rights have been infringed on - my right to work in my profession as a Teacher.  My right to work was interfered with on my job by allowing the students to attack me and not discipline them for their actions.  Anytime the policeman at your school tells the students they did not do anything and that I was not assaulted that places me in a dangerous work environment.  I had sent students out of my class for disciplining on several occasions - one student picked up a small glass fish bowl, and acted like he was going to hit me beside my head with it.  My students yelled out, "Reginald Don't do that".  Reginald entered my classroom on another occasion and he was hitting a soda bottle against the wall and on the students desks and finally on top of my roll book stating," come on and get some of this".  Each time a parent conference was held with the Assistant Principal he told the student go on back to class he did not do anything wrong.  I asked to have the student removed from my classroom that day, and the Assistant Principal and the Parent agreed to have the student remain in my classroom.  My human rights have been violated.  Due to the manner in which I have been treated by DCPS to lessen my dignity and respect from my peers and my students.

Also I believe once it was determined by my Principal and Assistant Principal how I might not get paid under the Workman's Compensation program by stating they did not know anything about my injury they tried to use the same strategy when the students attacked me in my classroom on 4/29/03 to have my claim denied; by simply writing on the Supervior's-1 form that I never did report the incident to them, and they had no knowledge that I was even injured or attacked on my job. Someone placed oil on my floor in my classroom. We had a teacher's meeting and the students were not at school. We left for lunch around 12 pm, and we were due back around 1pm. I left my classroom light on, but it was cut off when I returned. I opened my door with my key, turn on my light walked into the classroom just a few steps, and I nearly slipped on the oil on the floor. I managed to maintain my balance, but my foot slipped out from under me. I sprained my ankle and could hardly walk on it. I went to the Doctor, but he was not a participant of the Compensation program. So I had to re-schedule my appointment with a physician under the compensation program. This injury was reported to the Union Representative at Eastern. I also believe I went to Mr. Shepherd and told him about the oil on my floor and that I nearly slipped on it. I believe he told me to write it up. I did and gave him a typed copy the next day. I believe I gave the DC City Council a copy of the letter I gave to Mr. Shepherd. I was shocked that someone would place oil on my floor trying to injure me. My Union Representative at Eastern gave me a report to fill out, and gave me the compensation program number to report my injury to. I was able to schedule an appointment with a Doctor under the program. The injury report that was given to the Union Representative that was turned into the office no one was able to locate it. I wrote up a note indicating what had happened. I even asked the Assistant Principal by letter to have someone to come in and clean up the oil off of the floor before the students came to the school the next day. No one cleaned up the oil. So I thought when I saw a janitor in the hallway I would stop and ask them if they could clean up the oil off of the floor. I was told that was not my place to ask them to clean up the oil, rather that request should come from the Assistant Principal who handles requests like that. I told the janitor that I did put in a written request for Assistant Principal to have the oil cleaned up off of the floor. So no one got the oil up. Even though I wrote up what happened and turned it into the Principal, when it was time to fill out the Supervisor's 1 form no one knew anything about the injury and I had to walk around the building with a sprained ankle. I only wanted to get my leave returned that I used during this incident. The claims examiner stated she was denying returning the leave to me because it was stated on my supervisor's -1 form that I did not report the alleged incident to the Principal. When he had a letter indicating exactly what had occurred. The Assistant Principal, Ms. Gilchrist filled out the supervisor's -1 form indicating the incident had not been reported and no one knew about it. She took time to explain to me how my leave would be returned to me once I filled out the paperwork, and I had been approved by Workman's Compensation. So they (Mr. Shepherd and Ms. Gilchrist) already knew how to get people disapproved for disability compensation payments. By simply stating they did not know anything about the incident, since it had not been reported.

The IME documents (Dr. Smithpeter's and Dr. Smith) used to terminate me with had not been entered into Judge Carney's Evidence Records in the Administrative Hearing. Therefore they were not properly authenticated by Judge Carney so they are not reliable sources of evidence. Dr. Smithpeter's IME was missing a page, and it contained responses that I did not give him. Since I had been hospitalized on 4 separate occasions for PTSD, I also received

therapy for my injured shoulder which the students rammed into. I do feel I am entitled to receive payment for injury. I was removed from my regular teaching assignment which was to teach the talented and gifted students and I was intentionally placed with students who the Administration knew had attacked teachers before or threatened to attack them. Students who consistently seemed to fight other students daily and sent home at least once a week, and undisciplined students as well as special education students who were violent were placed on my schedule to teach. In other words students were handpicked who the Administration knew were discipline problems. I did file an EEOC complaint against my Administrator at Eastern. That led to worse treatment by staff members, and other teachers as well as the Administration. Teachers touched me inappropriately male and female. This was done right in front of my students while I was teaching and in some instances the inappropriate touchings were done right in front of other Staff Members. One teacher (a security guard) rubbed her lower private area across my behind. A second female teacher decided she would embarrass me right in front of my students. While I was engaged in instructing my students, we were reading through my textbook. The teacher just walked over to my desk and decided to rub her hand across my shoulder and back area in front of my students. The students were upset, and I had to take at least 10-15 minutes to try to calm them down the next day in class. The teacher was sent to another school. Then there was a male instructor who decided, while I was standing in line to sign in, on the sign in sheet in the office, he decided to pretend that he had to reach for something around me on the counter and rubbed his private area across my behind. I wrote him up and the next day I heard one of the Administrator's tell him whatever he was asking for it had been approved. While in the hallway making sure the students went straight to class (hall-duty), a special education teacher decided to try to place his hands on me in the hallway while the students were trying to get around us as they were passing to class. He was trying to put his hands on me, and I was doing all that I could to keep his hand off of my shoulder. We were actually struggling in the hallway; he was trying his best to push his hand on my body and I was doing my best to keep his hand off me. This teacher was a coach who had just been hired to teach at Eastern. It was my understanding he was suspended while he waited for a court case involving him placing his hands on female students that he was coaching. Finally two students decided they were going to attack me as well. With all of these demeaning situations that I had already undergone, the students had already witnessed what had occurred. One student came up to me and told me to be careful because she understood a student had pulled a knife out on me and nothing was done about it. She indicated when the Administration is not assisting you may get hurt. After that conversation about 90 days had passed I was attacked not by one student but two male students. Weighing about 180 lbs each. They took turns ramming into me on the left side of my body and then on the right side. When one student rammed into me he pulled on to me and them pushed me in the opposite direction with the other student ready to run and ram into my body on the opposite side. Each student rammed into me just like you would ram into a football player. I don't even know how I managed to remain standing. I did my best to soften the impact of the student ramming into my shoulder by trying to push the students away. I found that difficult because the students were using a martial arts form called capoiera. This is a South American Martial Arts Form. But if I had not tried to push them away from me it is a distinct possibility that they could have broken my arms and ruined my shoulder joints. My rotator cuff was injured. That is a typical injury that football players experience. The pain that I have is recurrent. I do have exercise equipment and exercise tapes that help when I do have pain. The Doctor told me when I was examined that there is nothing that can be done to stop the pain in my

shoulder except for drug therapy or surgery. He said sometimes surgery does not stop the pain. So this is something that I will have to live with. When I went to go to help, from the Administrators, at one point they just stopped assisting me. One Administrator would send the students back to my classroom undisciplined. Finally, the student that attacked me had just attacked a female student, she only weighed 100 lbs. I wrote him up and sent him out. About one month later he attacked me with another male student. He determined that I gave a student a passing grade but their girl friend received a failing grade. He further stated that even though Marquia does not do the work, she comes to class every day. The student who received the passing grade (D) does not even come to class. The student was out on a medical excuse. His father came to school requesting make-up assignment packets for the student. This was approved by the Principal or Assistant Principal. All of the student's teachers prepared make-up packets for the student. He did complete a science project (A), and he did complete a few additional class assignments. This allowed him to pass with just a D.

Ms. Nina Hill was properly served. Ms. Valentine had been her Supervisor. Ms. Orr is in Charge of SEDGWICK. Ms. Orr is Ms. Valentine's Supervisor. I did call DCORM about 2 summers ago to ask Ms. Hill and Ms. Winslow about my medical reimbursement. However, I was not able to reach either one of them as they were attending a training session at SEDGWICK. It was also my understanding then that Ms. Hill was working with both Disability Compensation programs. She would work 3 days at DCORM and then 2 days at SEDGWICK. At least that was my understanding. My claim was paid under the DC Disability Program out of Lanham, Maryland as that is where my claims examiner was located. I was told to mail documents and faxes to the Downtown DC Office at 441- 4th Street. N. W. So I can only assume that DCORM is working with SEDGWICK in a similar manner. Perhaps that's why Ms. Orr was located at 441 - 4th Street. N. W. It is my belief that Ms. Orr had been stationed at the New York Avenue N. W. address, and Ms. Valentine, has been located at 441- 4th Street., N. W., since 2004. As far as I am aware. If employees of the Disability Program got switched around from one division to another I hope that won't circumvent justice being done. Ms. Valentine had been located at 441- 4th Street, and she had been Ms. Nina Hill's Supervisor, as far as I know Ms. Orr is Ms. Valentine's Supervisor, since they are with the same company DC Disability Compensation, if Ms. Orr did sign such a document she must have thought she was supposed to do so. So she would be in essence the chief of operations then she would feel responsible to sign, Therefore, I feel Ms. Hill was properly served and service was completed correctly.

I don't know too much about CMPA. I work for the District of Columbia Public Schools. We have a Teachers Union to deal with teacher grievances. When teachers have been injured we have exclusively relied on the DC Disability Program or DCORM in order to receive workman's compensation. The Agency program which you referred to CMPA has not been used as far as I am aware by the District of Columbia Public Schools. That particular program may be utilized by the Federal Government Workers. The teachers have been referred to DCORM. If the teachers have been denied their claims they can request a reconsideration or file with the Administrative Services Division. Also there is an appeals section supervised and run by Ms. Jackie Orr. I did contact Ms. Orr, after I learned there was an appeal process set up from an on-line Worker's Compensation Program by the West Law legal Program. I contacted the lawyer's office giving the seminar and I was referred through their office to our state appeal office set aside to hear Workman's Compensation Appeals. I did send her a letter around 12/07, but to

date she has not bothered to respond to any of my letters and I believe I sent her three letters asking for assistance with my wrongful termination from A Due Process Violation. I also learned during that time that Ms. Nina Hill was working with Ms. Orr approximately 2 - 3 days a week, and she spent the remainder of the time at DCORM. At least that's what I was told by the receptionist. As a matter of fact Ms. Winslow also was working in the Appeals office under Ms. Orr. I called Ms. Winslow in reference to receiving my medical expenses reimbursement and I learned at that time she was receiving training at 1212 New York Ave., N. E., Washington, D. C. When I was not able to reach Ms. Hill, Ms. Winslow, and Ms. Valentine, I then referred the matter to Ms. Orr. All of the individuals working with DCORM simply ignored me. I did finally reach Ms. Hill on the phone to ask her about my reimbursement and to try to discuss the fact that I had a Due Process Rights Violation on my claim with her, she replied my case was closed and there was no Due Process Violation on my claim and hung up the phone. She had previously told me," they do not pay on stress claims". Maybe that's why I was ignored by them after a payment had been made on my PTSD claim of approximately $76,000. I sent a letter requesting a medical expenses reimbursement to Ms. Hill, Ms. Winslow, and Ms. Valentine. I received no response in regards to reimbursing me for my medical expenses as stated on my compensation order that I would be paid for medical expenses. I shared the same information by letter to Mayor Fenty, and Ms. Rhee. Still to no avail no one cared how I was doing or if I was getting better. No one even bothered to check to see if I had money for medications or for any exercise equipment to insure that I try to strengthen my upper shoulder area where I have a rotator cuff injury. I did buy an exercise bike that exercises my upper extremities as well as my lower extremities so that I can continue making progress with my therapy exercises for my shoulder. If Ms. Rhee and Mayor Fenty can spend at least 3 -4 million dollars on seeking an evaluation for DCPS Educational Program, surely they can make sure that I am reimbursed my money that I have spent on medical expenses. Surely they can also pay me my Back pay and front pay monies for my injury that I had nothing to do with causing. By placing me in a hazardous duty teaching position my Administrators insured that I would be injured. Special Education are trained to work with violent and emotionally disturbed students. They are paid at a different rate then teachers placed in a regular education program to compensate for the hazardous duty teaching position. I was intentionally placed in a hazardous duty teaching position teaching students who were violent and who had also been suspended the year before for disrupting the class and fighting. I was also given students who were violent special education students. I might have been stabbed by one of the special education students. At Hearing, one of the students who I had to go and help him down from the window as he was threatening to jump out of the window. He was stating he would kill himself. He told the group in the Hearing that I played with students. Then his mother started yelling, "you play with students". There I was with no one to assist me in a room full of angry parents (fathers and mothers) of the special education students who had pulled the knife out on me in my classroom. Now they were trying to see where to lay the blame except on the nineteen year old student who actually pulled the knife out on me. Now they were trying to assassinate my character, Rather than the special education department corrects the student's behavior by suspending them for their actions. While one student pulled the knife out on me, a second student was yelling out, I bet you scared as shit Ms. Deschamps," Henry's got the knife". In other words, I had just got through telling the students they could not cut the cake. I had not planned for a birthday party. A student bought in the cake without my permission. I felt just in case things got of hand it would be best if the students took the cake down to the cafeteria and cut it. They agreed to do

so. A student entered my classroom that I did not know. I did not know whether a student had in fact invited the student in to the class since she had bought the cake in. I did not tell the student to get the cake. The students told the Principal, the Assistant Principal that I told Lavonda to go get the knife. I never told Lavonda to get the knife. Lavonda left the classroom without my permission and they tried to cover that up. I heard the door shut, and I asked my class who just left out of the classroom. The students responded Lavonda. She came back with a knife. I could not believe that a teacher would have given her the knife. The teacher that gave the student the knife was not even in the Hearing concerning the knife. They were out to assassinate my character not the teacher who gave the student the knife. The Police Officer, Officer Dean, and Ms. Nicholson, and the Special Education Coordinator, Mr. Prince, and Mr. Shepherd, all agreed that I told the student to get the knife, and the students were expecting a celebration, and since I did not allow then to have the celebration the student apparently pulled the knife on me. Marion had the knife on top of the cake box, it was my intent to go get the knife from her, and give it to the Principal, and before I could do that the student entered the classroom that I did not know. My students insisted that he remain in the classroom. I escorted the student to the door, and when I returned to come back in front of the students Henry had come behind me and I turned around and the knife actually opened up my jacket. The Police Officer who is to keep peace, and knows the laws of DC, agreed with the Administrators that the students were involved with a celebration and wanted to cut to the cake. He knows if a student pulls a knife out on an individual on the street there is a penalty for assault with a deadly weapon. Why then was it different on this occasion. Students are suspended for just possessing a knife or having it in their back pack. I saw Officer Dean as he arrested one of the students who might have had drugs just across the street from the school. He threw the student down on the street, and handcuffed him while his face was either on the cement ground or the dirt close by. Grabbed his hands behind him, while he was still on the ground and handcuffed him, and picked him up of off the ground. if you can uphold the law just outside the school why aren't the laws upheld in the school? To make matters worse apparently Officer Dean, Mr. Shepherd and Mr. Prince indicated I had not been assaulted and that the incident was not reported to the school. I wrote out a student referral on both Brandon and Kiviante explaining what they had done to me in my class in plain view of my students so I could not lie. What happened to me happened because I was not liked and possibly because I have a law degree. Kiviante stated he could not believe that I was using the information from my law degree to get him in trouble. How did my law degree get into his explanation? He even stated that I played with him. When would I have time to play with him? I was hard at work the full approximate 8 hours that I was at work. Even during my lunch time I am grading papers for the most part, and xeroxing additional class activities for my incoming class. This was again character assassination. Kiviante stated in student response taken a month after the incident occurred that he did not hit me with his hands, and he did not mean to hurt me (intent). This would go against an assault charge. He swung his fist at me once but I moved back out of the way. One of the female students yelled out he's trying to hurt her. My students were so frightened not one student was able to move. What was the purpose of turning in Student Referrals on both students if the Administrators and the Police were going to place them in a file, and then state nothing happened to me. Dr. Paul Vance sent his security people over to investigate when I was waiting to be seen by the Doctor. I gave Dr. Vance the student's names who were present in class on that day. So Dr. Vance should have a written report of what happened in my class on that day. Two angry students attacked me because their girl friend received an "F" in my class. Mr. Shepherd stated no incident was

reported to him. The referral served as reporting the incident to him. I personally went to him but he was on the phone or with a parent. So I could not personally talk to him. Mr. Prince had the student discipline referrals. Mr. Prince spoke with both students after the incident. He placed a note in my box indicating a conference had been set up with the parents the following week. The student indicated he might have bumped into me. I wonder since the students actually rammed into me if I had fallen what they might have done at that point? Possibly step on me. If my schedule had not been changed by the Administrators I would have been teaching the talented and gifted students. I would not have been injured. By placing me with violent students the Administrators intended that I get hurt. Ms. Collins, did come to the school in October, and requested that I be given all Biology classes. There was a teacher who was not certified, but was given a Biology Schedule. My Union Representative stated there was a DC Law that stated Biology High School Teachers, must be certified in Biology. The Earth Science Students would have been placed with a male teacher. I would not have been injured. Mr. Fredrick came to my room and told me that I would not get the afternoon Biology classes and I would keep the Earth Science afternoon schedule that I had been given. All three of the morning classes that I was receiving from the male teacher all contained at least 15 students, where as all of my classes contained 27 students all day long. After I received the new classes immediately I was given additional students in each class.

What I found was there were several things done to me. One was character assassination. Secondly, harassment and sexual harassment. Additionally students were threatening me and nothing was being done about it. It was made difficult for me to complete my work with the students involving their developing laboratory skills. I was not given a lab while other teachers had a lab area to use. The lab that had been set aside was being used as a computer repair lab to prevent me from using the laboratory as I needed for my students. That year I used two teachers' labs while they were not using their labs. (The physics teacher and another science teacher) I think this was done to make me quit my job. I had already filed an EEOC complaint. I noticed after Ms. Cheryl Harvey, a security guard was reported by me to the Principal and the Superintendent because she grabbed on my shoulder, and rubbed her private area across my behind while I was standing in line. The student standing behind me could see what she had done as this was done in plain view. Since Officer Dean told me she was his friend and he knew her and that he felt she did not mean anything by it. Just because a police officer is a friend to someone that does not mean they are exonerated from whatever crime they might be become involved in. A battery is a battery. I reported this incident to the 5th District. After I reported the incident to the Superintendent the security guard was transferred. This may have led to Officer Dean becoming angry with me. So when the student pulled the knife out on me he did not do anything wrong. Officer Dean explained to me that he was friend of the student's family and he knew them. He told me this when he came into my classroom to let me know he had gotten the knife from the students. He described the knife as being a black handled knife. I told him yes it was and it was serrated as well. The students rammed into me just like they were attacking a football player. I went to the 5th District to report this incident, I was sent back to the school by the on duty sergeant to see Officer Dean. They placed a phone call into Officer Dean, and Officer Dean the 5[h] District he wanted to handle it. When I checked back with Officer Dean he told me he had held a conference with the students and their parents and he determined I was not assaulted and the students did not do anything wrong. He even took time to write an electronic entry to the police department telling them I was not assaulted. When he had a copy

of the incident report and the student referrals. What's the point of me writing down a report of what occurred when they take sides with the students? I have had two students threaten me and the Administrator have placed them right back in my classroom. One of my male students threatened to hurt me because he did not plan to complete his class assignment. I sent him out for discipline that school year, and the following school year the student was placed right back on the class rolls. Secondly, a female student that I had sent out to the Administrator on a few occasions decided she was going to try to hit me against my head while the students and I were engaged in completing a reading assignment. She actually got out of her chair located in the rear of the classroom and while we were reading she proceeded to come up to the front of the class where I was sitting and tried to hit me beside my head with her hand. I caught a hold of her hand and continued to push her hand back away from my head. I finally wrote her up and sent her to Mr. Fredrick's office. She was suspended, but she came right back to my class. Even though she told me she was sorry for what she had done, I felt it would have been best to take her out of my class and place her with another science teacher. I was not the only earth science teacher or biology teacher, so the students could have been placed in other classes.

I wanted to establish that Ms. Orr or Ms. Valentine would have been the appropriate persons to receive a notice in regards to an impending lawsuit against Ms. Hill. I told Ms. Hill, by letter as early as 1/06, when I received I was terminated from DCORM without the appropriate 30 days prior notice, as DC Statute 1-623, stated I should receive notice. Based upon the DC City Council stating that I should notice (30 days prior notice) and that I did not receive notice, that was a Due Process Rights Violation and it places DCORM in a non-compliant status. DC Statute 1-623 and the Lightfoot case have set the legal precedent for how the District of Columbia employees claims are administered through the Workman's Compensation Program. Judge Carney's evidence record at the Hearing did not include Dr. Smithpeter's IME or Dr. Smith's IME. ( Items submitted into evidence) Judge Carney disallowed the use of Dr. Smithpeter's IME report in his hearing therefore, it was never authenticated as reliable evidence, and DCORM should not have used Dr. Smithpeter's report since it was admitted into evidence by Judge Carney, this document should have been disallowed for DCORM to use. I wrote to DCORM to request that the document be disallowed and I let them know that Judge Carney did not authenticate the document nor was it entered into evidence and that they should be disallowed in using it as well. DCORM should be estopped from denying me further payments from DCORM/DCPS, and my claim should be reinstated, and all the benefits that Judge Kotelly Kotar stated I should receive in the Lightfoot case should be given be immediately.

No one has ever spoken to me about a Settlement of any kind on my claim. I was told by Ms. Williamson on approximately 6/29/08, that I should have my Lawyer call Ms. Mullen, and Ms. Fleming in regards to a settlement. My EEOC Attorney stated she could not call the Attorneys but they could call EEOC. Further after checking with Ms. Mullen, Ms. Fleming, and Mr. McCarren, (since I had no Attorney to call for me) I called to discover there was no settlement they just wanted me to know they were representing Ms. Hill and another employee. Since I was handling my case Pro Se I had no choice but to call to try to determine what they wanted.

I sent Ms. Pamela Smith a certified letter concerning the Lawsuit because she represented DCORM/DCPS, at the Administrative Hearing with Judge Carney. I wanted her to give

DCORM/DCPS notice of the impending lawsuit. Since she represented them in Judge Carney's hearing.

Mayor Fenty and Ms. Rhee are the officials of DCPS. They refused to pay on my Workman's Compensation Claim, and they also failed to give me 30 days prior notice before terminating my workman's compensation claim. Ms. Valentine, Ms. Hill, Ms. Orr, and Ms. Winslow have violated my Due Process Rights. I notified Ms. Hill, Ms. Valentine, and Ms. Winslow just as soon as the violation occurred but they refused to correct the error, on approximately 1/26/06. ( ) Judge Kotelly Kotar indicated that when a Due Process Rights Violation exists on a claim the claimant is to be immediately reinstated, and the claimant is to be immediately paid all back pay and front pay monies. The claimant is also reinstated on their job as well as given all bonuses, salary ladder steps, raises; and I should be given my accrued leave as well as to be given all increases that all other employees received. All the service time that I have been out under the doctors care (injury occurred 4/29/03) I should not have a break in my service time, and that time should be given to me towards my retirement time as well. Mayor Fenty and Ms. Michelle Rhee are the Officials for DCPS and Mayor Fenty is the Mayor of The District of Columbia. Therefore, both Ms. Rhee and Mayor Fenty were properly notified of the impending lawsuit and should be liable for the torts, Due Process Rights Violation and Negligent acts of their employees. Ms. Valentine is also responsible for the Due Process Rights Violation existing on my claim, and for the acts of her employees not paying on a Workman's Compensation Claim. By not giving me the 30 days prior notice this is a Due Process Rights Violation, and I should be reinstated immediately to the DC Workman's Compensation Program, and I should be reinstated to my job as well. I should receive all back pay and front pay monies within 24 hours. I indicated someone had forged answers to the Doctor's report; I only received a copy of the Doctor's report on the day of the hearing when it was given to me and to Judge Carney by defendants Attorney. No one signed a medical release so that I could request a copy from the Doctor's office; the report was also missing a page, therefore, it was an incomplete report. No agencies would terminate a claimant's claim on an incomplete report, especially when you had a copy of my doctor's report indicating that my PTSD injury was caused by the student's physical attack. My claim should not be constantly terminated which would allow an undue delay for me to receive my benefits and I would have to start the process all over again in applying for Workman's Compensation Entitlements.

I did call the Grandfather Office at DCPS. I was placed on the voice mail system by the switchboard operator. I left a message letting the person know who was in charge of that office, that I was told in approximately 1984, that I had been Grandfathered In with DCPS. I was told that any new policy affecting new employees would not affect me or be required of me. I left a message involving my situation regarding my Disability Compensation being terminated. I called back the next day to discover that the individual in this office had been reassigned or resigned and the Grandfather Office was closed over night. Also, I was told that I would receive the 1/3 balance of a teacher incentive raise. I had been given 1/3 of the raise, approximately 5 months after I applied for it; I only received this raise only with the assistance of a lawyer. The 2- 1/3 of the raise was received the following year. After I got down to the personnel office to see when I was going to receive the last 1/3 of the raise and I was told. DCPS was holding the money for me and I would have to come back to work after being released from the Workman's Compensation program. I was told I was on inactive status. Later, I discovered

that DCPS actually cancelled the program. I don't understand how they cancelled it as I am still a participant on this program and I was never paid the balance of the 1/3 raise I should have received. Another employee also applied for the raise under the Teacher incentive program, she received her money when she first applied. She did not receive just 1/3 she received the total for the Doctoral pay. This is placed here to show how DCPS will promise you benefits and then don't give them to you.

I submitted a second compensation order to Ms. Valentine on 1/24/06 and I submitted a copy to President Bush. I sent him a copy so that he could keep abreast of what was occurring on my claim since I do have a Disability (PTSD). I explained to Ms. Valentine that my claim had been approved, and both claims had been merged (the PTSD claim and the rotator cuff claim injury) since Ms. Winslow indicated the injuries arose out of a single occurrence on the same day, and my PTSD injury arose from my earlier injury (rotator cuff), the injury occurred from the same incident, and it involved the same parties. The problem was Ms. Winslow kept changing the dates that I could expect payment on my claim. When my initial claim was accepted on 5/05, I was not paid until 10/05. I had to get a lawyer to get my check released. I did not want to experience the same problem I had already experienced. So I contacted Ms. Valentine by letter on 1/24/06, and on 1/25, she submitted a check to me. My checks were supposed to be sent to me every two weeks. I did let Ms. Valentine know that Ms. Winslow was not handling my claim in a professional manner. On 1/25/06, I was immediately terminated from receiving further entitlements without any new medical information or a change in my medical condition. I received my termination letter on 1/26/06. This does not reflect the 30 days prior notice that I was to receive. This is a Due Process Rights violation and DCORM is non-compliant with DC Statute 1-623, and non-compliant with the Lightfoot case law as well.

Finally, I applied for Disability Retirement. I submitted an application to DCPS Retirement section, and directed the packet to Ms. Crosan. I had spoken to her by phone prior to submitting this packet, and she indicated to me at that time would be the person handling my application. After two months had passed I phoned Ms. Crosan, and I faxed a letter as well inquiring the status of this application. I had already submitted a copy of my hospital and my Doctor's supporting letter to her. When I was able to reach her she let me know she had received a fax inquiring about the status of the application about two - three weeks earlier but she could not locate the application. She was not sure where it was because she handled a certain alphabet for retiring employees and another staff member handled the remaining alphabet. She did have an opportunity to check with the other person and she indicated she did not have my application. Since the application had been lost for two months, I sent them another disability retirement application. When I called back she told me there was only a small window of opportunity that I had to apply for disability retirement- 1 year after, I had been terminated from workman's compensation. Since that time had passed I was too late. Ms. Crosan and Ms Reid told me they were referring my application to the legal section of DCPS. I told her when I applied I did put on my letter that I was applying under the American's With Disabilities Act (ADA), and that policy gave me the right to apply for benefits when I discovered that I was entitled to them. No one told me from DCORM or DCPS about this policy prior to the deadline to apply. I was on a great deal of medications, so therefore even if she told me it might have registered and then it might not have. If you feel you are entitled to services you continue asking until someone listens to you to help.

16

Respectfully Submitted:


MARGARET E. DESCHAMPS, **Pro Se**
P.O. BOX 1350
CLINTON, MARYLAND  20735

# Certificate of Service

I hereby certify that on this 10th day of July, 2008, I served a true copy of the foregoing **Plaintiff's Motion Not to Dismiss Plaintiff's Complaint, Plaintiff's Motion amending claim to 1 Million Dollars, and $50,000 for each day Plaintiff did not receive her Back pay monies from DCORM/DCPS, Motion requesting the immediate release of Plaintiffs back pay and front pay monies while the Judge hears the case, Motion requesting that the Judge judicially notes that the Lightfoot v The District of Columbia case is still being heard by Judge Kotelly-Kotar, and Lightfoot Plaintiffs and Defendants Attorneys, and requests that Judge Kotelly-Kotar's holding in the Lightfoot case be applied to Plaintiff's case, Memorandum in Support thereof, and proposed order were served, In case (Civil Action No.01 - 1484) (CKK)** by first class mail, postage prepaid, on the following persons:

Thomas V. McCarron
Semmes, Bowen & Semmes
250 West Pratt Street, 16th Floor
Baltimore, Md.  21201

Ms. Mullen
Attorney General Office
441 - 4th Street, N. W., suite 1060N
Washington, D. C.

Mayor Adrian Fenty
District of Columbia Public Schools/
Mayor of the District of Columbia
1350 Pennsylvania Ave., N.W.  (Rm 310)
Washington, D. C. 20004

Ms. Michelle Rhee, Chancellor
District of Columbia Public Schools
825 North Capitol Street, N. E.
Washington, D. C.  20002

Ms. Kelly Valentine
Interim Chief Risk officer DCORM
441 - 4th Street, N. W.
Washington, D. C. 20002

Ms. Johnnie Winslow
Interim Chief Risk officer DCORM
441 - 4th Street, N. W.
Washington, D. C. 20002

1

Ms. Nina Hill
Senior Claims Adjuster
DCORM
441 - 4th Street, N. W.
Washington, D. C.  20002


Margaret Deschamps Pro Se                    Date                    7/10/08

2

# JEROME E. CLAIR
## ATTORNEY AT LAW

McGraw Hill Building
1200 G Street, N.W., Suite 800
Washington, DC 20005

Phone: (202) 434-4558  Fax: (202) 434-8707

October 27, 2006
Nina Hill, Claim Representative
D.C. Disability Compensation Program
441 4ᵗʰ Street, NW
Suite 800
Washington, DC 20001

Re: Margaret Deschamps
     Claim No.: M7-BOEdu004895

SENT BY FACSIMILE AND US POSTAL SERVICE: CORRECTED LETTER

Dear Ms. Hill:

This office represents Ms. Deschamps in her effort to receive compensation for the on-the-job injury she sustained. In a letter from you dated January 25, 2006 you denied her claim for disability allegedly based on an independent examination and report from Dr. Robert Smith which was written April 19, 2005.

August 22, 2006 Ms. Deschamps was examined by Dr. Peterson (see enclosed disability certificate) who determined Ms. Deschamps is unable to return to work.

D.C. Code § 1-623.01 *et seq* as well as the court opinion in *Lightfoot V. District of Columbia*, No. 05-7028 makes it unlawful to terminate a claimant's benefits within 30 days after she has requested a reconsideration.

Ms. Deschamps filed a reconsideration request February 26, 2006. Your office terminated her benefits and have not set a reconsideration hearing.

This letter is a request that you reinstate Ms. Deschamps benefits and send her a check within 24 hours and we ask that a reconsideration hearing be held where appropriate consideration can be accorded Dr. Peterson's certificate of disability.

I await your prompt response.

Sincerely,

Jerome E. Clair

*[Handwritten note in left margin: Please note what the Attorney states on my behalf. a request → for my check to be sent.]*

Yahoo! Mail - margaretdes@yahoo.com    Case 1:08-cv-00847-RBW    Document 20-2    Filed 07/10/2008    Page 2 of 23

http://us.f553.mail.yahoo.com/ym/ShowLetter;_ylc=X3oDMTUyM...

Yahoo!   My Yahoo!   Mail   Tutorials   More          **Make Y! your home page**          Welcome,   **margaretdes**   Sign Out   All-New Mail   Help

# YAHOO! MAIL

Search:

Web Search

**Mail**   Contacts   Calendar   Notepad

Mail For Mobile - Mail Upgrades - Options

**Check Mail**          **Compose**

Search Mail          Search the Web

○ Netflix
   Try for Free!

Previous | Next | Back to Search Results

**Delete          Reply          Forward          Spam          Move...**

**Folders**          [Add - Edit]

Inbox (5072)

Draft

Sent

Bulk (596)          [Empty]

Trash          [Empty]

**My Folders**          [Hide]

Atty. Lisa Ward

Canyon Trail Dr... (2)

D.C. Disability... (1)

Dr. Vance and S...

Drenna

Eastern

FYI MISC

Household Bills...

John

Kalil

Kyrisha

Kyron (1)

Law and Bar Info

MISC. Bills

MVA

Mark

P.G. Realtor

Pacer Account

Religion

Taxes

Union Info

**Search Shortcuts**

My Photos

My Attachments

This message is not flagged. [ Flag Message - Mark as Unread ]          Printable View

**Subject:**   RE: Payment of my Disability Compensation Funds

**Date:**   Fri, 13 Jul 2007 18:55:06 -0400

**From:**   "Rhee, Michelle (OOC)" <Michelle.Rhee@dc.gov>   ↗ Add to Address Book   ✎ Add Mobile Alert

**To:**   "Margaret Deschamps" <margaretdes@yahoo.com>

Am looking into this for you, any further information you can provide would be great.

**From:** Margaret Deschamps [mailto:margaretdes@yahoo.com]
**Sent:** Friday, July 13, 2007 4:57 PM
**To:** Rhee, Michelle (OOC); margaret deschamps
**Subject:** Payment of my Disability Compensation Funds

7/13/07

Chancellor Rhee:

     Is there anything that you can do to facilitate payment of my Disability Compensation Entitlements that was wrongfully terminated?  I have no other funds and I do need my Disability Compensation Entitlements to live off of until I am released to return to work.  This is an emergency financial situation could you kindly release my disability payments immediately? Thank you in advance for your assistance.

                                        Sincerely,

                                        *Dr. Margaret Deschamps*
                                        Dr. Margaret Deschamps

| Delete | Reply | Forward | Move... | Item B |

This message is not flagged. [ Flag Message - Mark as Unread ]

Date:

From:

Subject:

To:

1/24/06                    *Send as Send Compensation*
                              *Check*

Memorandum

To:   Ms. Kelly Valentine
      Interim Chief Risk Officer

From: Margaret Deschamps

Subject: Release of my Disability Compensation Check, Claim #: M7BOEDU0048951
         & LTDCPS03752

I telephone Ms. Winslow to ask when would the courier be bringing my check? She had previously discussed with me on 1/19/06, at 9:30am, that the check would be sent to me by courier, because she wanted me to sign for the check to indicate that I had received it. She further stated that the check would be cut midweek by Treasury, the date she stated was Wednesday. She further stated that the courier could bring the check to me on that day. Now she states she did not say that. If Treasury cuts the checks on 1/25/06 (Wednesday) she must have told me how would I know? I did state to her that last year when my check was processed I was told it would take only a couple of hours and if I wanted to I could come in and pick up my check at your Boston Way Office in Lanham, Maryland. I did. The check was ready just like they said in two hours. I wrote down what Ms. Winslow shared with me over the phone. She further stated we don't do our checks that way, ours goes to Treasury and they are cut every two weeks. That's what I wrote down. Ms. Winslow further states that she still has to calculate and process the check, and she is not sure the check may not be ready until Thursday or Friday, January 25 or 26, 2006. She did not mention the Courier bringing the check to me today (1/24/06) but that it would be mailed by certified mail so that I could sign for the check. I am concerned about the time changing that my check will be ready, this seems to be creating an unnecessary delay. I have bills to pay which have gotten behind.

Can my check be processed and cut at once, so that I can get my check by courier as originally promised by Ms. Winslow. A Sworn Affidavit was submitted to your office for the tax year 2005, indicating that I did not work during the year and a copy of my tax returns for 2004, on 1/14/2006. I submitted those documents to Ms. Winslow after she told me I had been approved on 1/13/06, at 9:30am, for my disability compensation entitlements. She indicated she needed those documents from me. How soon can my disability compensation check be courier expressed out to me?

Sincerely,

Dr. Margaret Deschamps
(301) 877-9418

*Evidence Record*

DISTRICT OF COLUMBIA GOVERNMENT
BEFORE THE DEPARTMENT OF EMPLOYMENT SERVICES
OFFICE OF HEARINGS AND ADJUDICATION

MARGARET E. DESCHAMPS          *

     Claimant,          *

     v.          * AHD PBL No. 05-013
             DCP No. M7-BOEDU0048951
DISTRICT OF COLUMBIA          * Hon. Fred D. Carney
PUBLIC SCHOOLS
            *
     Employer.

## EMPLOYER'S EXHIBIT LIST

1. Notice of Determination dated March 14, 2005 (Controverted).

2. Supervisor's Report dated June 18, 2003.

3. Claimant's Request for Formal Hearing dated 3/21/05.

4. Physician's Report of Employee's Injury dated May 6, 2003.

PAMELA L. SMITH
Assistant Attorney General
Personnel & Labor Relations Sections
Office of the Attorney General for the District of Columbia
441 4th Street, Suite 1060 North
Washington, D.C. 20001
(202) 724-4081

*FAX NO: DC Disability (202) 727-8319*

January 31, 2006

Memorandum

*Urgent Request #4*
*\* DCOKM/DCPS Non-compliant*
*They were notified that they were in*
*contempt of court due to a Due Process*
*Violation - No 30 days prior notice given*

To: Ms. Kelly Valentine
       Interim Chief Risk Officer

From: Margaret Deschamps( M7BOEDU0048951 & LTDCPS038752)
         Disability Compensation Claimant          *PTSD*

Subject: (1) ( Bogus Medical Doctor's Report)
                     Possibly tampered with
*(PTSD)*   (2) Claim can't be denied based upon erroneous medical document
                     (Dr. Smithpeter's medical report) Motion made to authenticate
                     Document on 11/3/05 to Judge Carney and Assistant Attorney
                     General, Ms. Pamela Smith. (It was never authenticated, so it can't
                     be accepted as a genuine medical resource to be relied upon.)
              (3) I might file for a possible injunction against D. C. Disability Office of
                     Risk Management due to erroneous denial of claim based upon an erroneous
                     Medical document once a final determination was made on my claim. My
                     My claim had already been evaluated, accepted and the check mailed out
                     received and cashed by claimant. You're in non-compliance
                     With the Federal Law as set forth in the Lightfoot Case. Backpay money
                     Was not Received for the time period 6/21/2003 – 4/17/2004. Also if I do
                     I do not receive Biweekly paychecks this will also cause for an injunction to
                     Be filed in the Federal Court. I will be seeking a Million dollars for
                     Unnecessary Harassment, non-compliance with the Federal Law in the
                     Lightfoot case, 339FSupp.2d78. Also under D. C. Disability Compensation
                     Act (DCA), Code statute 1-623, which the Lightfoot case was filed under in
                     Federal Court. (Just in case someone tried to change the original law, as
                     Stated by Assistant Attorney General, Ms. Smith, at the Hearing on
                     In 11/3/05.) In addition to the 1 Million dollars I will be asking for, I will
                     Also seek $50,000 per day for each day your Agency does not give me my
                     Backpay money.
              *(4) Procedural error - 30 days Prior notice not given prior to terminating me*
                     *(from Disability Compensation) (Due Process Rights Violation.)*
       I received your communications( on 1/28/06) denying my claim in which a final
determination have been given on 1/13/06 to accept my claim; based upon Dr.
Smithpeter's evaluation report, and Dr. Smith's orthopedic report. In regards to Dr.
Smithpeter's report, I attempted to authenticate the report by contacting Dr. Smithpeter
on 11/3/05. His report contained several made up responses that I was supposed to have
stated to him, and I did not make those statements. Therefore, it is a bogus report. It
would have been impossible for Dr. Smithpeter to make an accurate assessment
concerning me with incorrect responses. Just as soon as I read Dr. Smithpeter's report
just moments before the Hearing started on 11/3/05, in the Administrative Hearing at
AHD, I objected to the report being entered into evidence by the Assistant Attorney
General, Ms. Smith. Judge Carney did not even allow the medical document to be

*CC: Marion Barry*
*ex. 17*

*Page 1*
*To: MS Valentine, dated 1/31/06*

entered into court due to it's untimeliness. So there was no discussion concerning Dr. Smithpeter's findings allowed in the Hearing. I made a motion to Judge Carney based upon the fact that the document had not been authenticated. The Doctor's report was incomplete as a page was missing, and contained incorrect statements that I did not make to the Doctor. Therefore, this medical document can't be used to deny my claim. When a motion was made questioning the authentication of the document a write up was given to Ms. Smith, and Judge Carney there were at least 6-7 inaccurate statements. Ms. Smith was under a duty to share this information questioning the authenticity to her clients (The Employers- District of Columbia Public Schools and D. C. Disability Office of Risk Management). This document should not have been used to deny my Disability Claim. It only served to delay the process attempting to make sure that I would not have access to the money that was already released to me because it was determined on 1/13/06, that I was entitled to the money and was approved. The evidence used to deny my claim was based upon erroneous assertions that I did not make. Therefore this document can't be used to deny my claim. The report is a bogus report, so it has no value in terms of making an accurate assessment on. The Court held in the Lightfoot case treatises, medical journals, Medical Reports, medical articles would constitute what would be acceptable evidence to be used in determining a claimants claim, and an erroneous or bogus report does not fit into what is acceptable evidence to render a decision on to deny or terminate a claimants disability claim. Doctor's findings are rendered on correct information supplied by the patient, and an accurate medical assessment can't be rendered on incorrect medical information.

(PTSD)

Therefore, my claim can't be denied based upon an erroneous/bogus medical report. Also I attempted to set up an appointment with Dr. Smith to have a reassessment of my shoulder and upper back. I could not locate him at the Oxon Hill office, he does not work there. He has his own office in Northern Virginia.

I have a recent Dr.'s note to give you, and I have not been released to return to work yet based upon Dr. Peterson's evaluation. I am scheduled to see him again in March.

Also, Ms. Valentine I am being harassed and discriminated against. A former co-worker was injured at Eastern Senior High School- Carpel Tunnel Syndrome. D. C. Disability had no problem paying her. She did not have to go to a hearing to get paid. She developed carpel tunnel syndrome. I was physically attacked by two students in class. She had no difficulty getting paid while she was off of work. The following year she had a reoccurrence again and was paid again while she was off of work. I have had a reoccurrence of shoulder and back pain.

Some of the negative experiences that had occurred at DCPS that apparently had been suppressed, I had forgotten them are now resurfacing. For example:
1) A female employee intentionally walking between me and some students making Sure to grab hold of my shoulder and rubbing her body against me.
2) While in the main office signing in at the front desk a male teacher rubbing his Lower groin area across my behind.
3) While on Hall duty a male teacher was grabbing me trying to put his hands on my



Page 2 of M. Valentine
To M. Valentine
Dated 1/31/06

Shoulder and I grabbed hold of his hand, I was trying to push this male teacher away from me. We actually had a tugging match going on in the hallway. I was pushing him away from me, and he was trying his best to continue to push his hand on to me. A new special education teacher. The Superintendent told him not to come back to my classroom or come by my classroom and togo around the opposite hallway. The Superintendant held an investigation.

4. While teaching my class, and the students and I were involved in a reading activity. We were Reading our textbook; a teacher assigned to assist me at that period (Special Education), decided to walk in front of my class (full of students) I was sitting at my desk, and she started rubbing or massaging my shoulder. I removed her hand off of me. I reported her to the Superintendant. An investigation was held by the Superintendant's personal security people interviewing the students present in my class at that time. The teacher was transferred to another school. *Reassigned later due to the Special education Dept Coordinator stating she was needed bad.

These teachers were reported directly to the Principal and the Superintendant immediately. The Special Education teachers were told by the Superintendant not to come back to my classroom. I was told if they did come back let them know they were not supposed to be in my classroom and report to him. The Superintendant also held an assembly at the school to let the children know about sexual harassment and if someone touched them (teachers or other students) inappropriately they were to report it immediately to the Administration or a Teacher

Also as a Teacher I made sure to include abstinence when I taught on Aids. After being hired at Eastern I found out that a lot of High School Students had aids. Some of my students were pregnant. I made sure to refer the students to a special program run by a church in the District of Columbia. This program included counseling, parenting skills, and career development. The program was designed to make sure our young people went to college. Also they had funding to assist the students in remaining in school. They also would assist in providing daycare, so that the students would not drop out of school.

I also started an Entertainment and Sports Law Club. I was able to get ticket for students to attend the MCI center to attend the Wizards Basketball games. I also included Health Careers in my science curriculum. I even started discussing entrepreneurial topics with the students as well discussing college opportunities with them.

I have taught approximately 3000 students or pretty close to it. I run into my students occaisionally when I shop. It makes me happy to see my students, who are now entering the work force and going on to college.

The Superintendant tried to make sure to keep the Special Education teachers out of my class. However, one of the Assistant Principals said to me where is the letter from the Superintendant which states that. I did not have a letter. I was told by one of the Superintendant's Security Officers. Since I did not have a letter to show him what the Superintendant stated he allowed the Special Education Teachers to come back into my

Page 3                    To ms valentine
dated 1/31/06

classroom. That led to the struggle outside of my hallway with a man 2-3 times my size. He was a football coach, and had just been hired by the Special Education Department.

Also the same Assistant Principal prevented the Union's request from being followed. The Union indicated that all of my classes were to be changed to all Biology. I am certified in Biology. However, the Assistant Principal upon his hearing of the change indicated only my morning classes would be changed and not the afternoon classes. My morning classes were Biology and my afternoon classes remained earth science classes. If the afternoon classes had been changed I would not have been injured. My afternoon classes would have been given to a male teacher. I have found that male students have more respect for a male teacher. The Assistant Principal changed the schedule that was decided upon by the Union and the Principal. Consequently I did get hurt, and I did not have to get hurt.

Finally, my claim can't be denied based upon a bogus medical report. This would not be indicative of a bonafied reliable medical resource to deny a claimant's disability entitlement on. Also I have not been released from Dr. Peterson's care to return to work yet. I will see Dr. Peterson again in March 2006. See the Doctor's note. Also per Judge Carney's holding, my case was sent back to your office to make a final determination on. The Final Determination was made on 1/13/06. You have had Dr. Smithpeter's and Dr. Smith's reports since approximately 5/2005. All the information that you had prior to making a final determination on my case was utilized, and a final determination was rendered on 1/13/06. I was approved for payment until I am released from the Doctor's care. A Doctor's note is provided for your files.

Based upon the Federal Law in the Lightfoot case, 339 F. Supp.2d 78, I am to be paid for backpay as well from the period 6/21/2003 – 4/17/2004. I only received a partial payment when I received my first check in 10/2004. I did not receive my full salary amount.

Since I feel I have been intentionally discriminated against and unnecessaryily harassed if I do not receive the balance of/this amount immediately, *you will be in contempt of C ourt.* Based upon the Federal Courts decision in the Lightfoot case. Also if I do not receive my biweekly paychecks as scheduled I will have to file an injunction against you in Federal Court. As stated earlier I will request from the Federal Court, that I be paid 1 Million dollars for discrimination an undue harassment and wrongfully denying my claim. I will ask also that you be found in contempt of Court for each day that I do not receive my backpay money and that I be given $50,000 for each day that I do not receive the backpay money for 6/21/2003 – 4/17/2004.

*wrongfully denying my claim. Did not receive 30 day per notice as specified in DC STAT #823 and the Lightfoot case.*

Sincerely,

Dr. Margaret Deschamps

*Page 4
To Ms. valentine, Dated 1/31/06*

# DISTRICT OF COLUMBIA DISABILITY COMPENSATION PROGRAM

441 4th St.- Ste: 800S, NW, Washington DC 20001
Office: (202) 530-1177 Fax: (301) 429-9104

**FORM 5**

## COMPENSATION ACCEPTANCE ORDER

**Name of Employee:**   Margaret Deschamps
**Address:**           P.O. Box 1581
                      Clinton, MD  20735
**Claim Number:**      M7-BOEdu004895
**Social Security Number:** 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
**Date of Injury:**    4/29/2003
**Agency:**            Secondary

### YOUR DISABILITY COMPENSATION CLAIM IS HEREBY ACCEPTED FOR THE REASON INDICATED BELOW:

*On April 29, 2003, at approximately 2:15 p.m., while you were performing your duties as an Instructor for Eastern Senior High School, you were injured. As a protective measure, you pushed two students away from you as they pushed, bumped, and harassed you with questions about another students' grade for your class. You sustained a contusion of the right rotator cuff, strain of both the anterior and the levator scapulae.*

Continuation of Pay (COP) is authorized for up to 21 days if prescribed by a NHR P.P.O treatment Physician and directly related to injuries sustained in the above referenced accident.

Medical expenses for the above injuries arising from this accident and performed by and/or prescribed by a treating NHR P.P.O. Physician (1-800-842-2917) and directly related to the injuries sustained in the above referenced accident, are compensable.

Shirin Quddus,
Claims Examiner

Gwen Tolbert,
Program Manager
Date:  May 17, 2004

CC:    Eastern Senior High School

Form 7.1-046, Rev. 2                    Page 1 of 1

Corrected 1/17 12:11 cc, Please Place with my
Reconsideration package. M.D.

Date: Nov. 30, 2006

To: Councilmember Marge (202) 724-8076
Mr. Jerome Clair (202) 434-4558 8704
Ms. Johnnie Winslow (202) 216-4749
Ms. Nina Hill

From: Margaret Deschamps
(301) 877-9418

Sub: Unnecessary Status Change-
From Acceptance to Termination.
Allowing my claim to be placed
in Reconsideration Status. Acceptance: 1/3/06
Terminated: 1/27/06

Ms. Hill the Judge's order attached
on the last page state's your office
is to make a "Final Determination
on my claim. Your office made a
Final determination on my claim (1/13/06) P.T.S.D.
and paid on my claim on 1/25/06.
To change the status on my P.T.S.D.
claim was not warranted, as your
Office had no new evidence which
would change the status of my claim.
I did state to the Judge and Ms.
Smith your attorney that Dr. Amer Hpetter's
report contained erroneous statements. The
Judge did not admit this report dated approximately
5/06 into evidence. (Submitted brief Explanation)

* Due to objection
Judge ruled
untimely!
Report not to be
submitted in
court
(Dr. Smith petter)

Sincerely Dr. Margaret Deschamps

* By continuously removing my claim into a Reconsideration stage
it simply insures that DC Disability attempts not to
pay on a valid claim. I was injured on my job and Statute
1-623 of the DC Code should apply.

FAX Number : (202) 727-8319
(202) 456-2461

Request #4

4/10/06

MEMORANDUM

To:  Ms. Kelly Valentine
Interim Chief Risk Officer
441-4th St., N. W.
Washington, D. C. 20001

Ms. Johnnie Winslow, D. C. Disability Office of Risk Management
Ms. Nina Hill, D. C. Disability Office of Risk Management

From:  Margaret Deschamps, Disability Claimant
Claim #: M7BOEDUOO48951, LTDCPS03752

Subject:  Continuation of Disability Entitlements

I am submitting my Doctor's Certificate, from Dr. Stephen Peterson, Washington
Hospital Center. I am to return to his Office in July 2006. I have not been released from
his care yet. Release my back pay benefits from 6/21/03 – 4/17/2004. If there is a
problem determining my pay from this period please go to DCPS and get the monetary
amount due for this period. Since I was only paid $31,491.75. This was not the proper
pay for a teacher with the number of years of experience that I had at that time. Please
certify this amount with DCPS payroll, if there is a question as to how much I should be
paid for this back pay period. Release my front pay disability entitlements as well.
Thank you in advance for your cooperation.

Sincerely,

Margaret Deschamps
Dr. Margaret Deschamps
(301) 877-9418

accepted my claim for payment on 10/04, and 1/13/06, Judge Kotelly-Kotar's Court Order was still in effect. When my claim was accepted it also included my job reinstatement at that time. So I should not have a break in my service time with DCPS.

I hope there are no hard feelings because I am asking for my Workman's Disability Compensation Entitlements. These entitlements are due me because I was injured on my job and it represents a contractual agreement between the employee and the District of Columbia.

I have taken time to write my request for payment in the event I have to seek additional legal counsel. The attorney will want to know if I have exhausted every avenue in seeking payment on my Disability Workman's Compensation claim with DCPS and DCORM.

I am attaching a copy of a letter sent to Ms. Valentine and Ms. Suarez dated 8/12/07. I am also sending a copy of the letter from my previous attorney, Mr. Claire dated 10/27/06.

Thank you so much for your assistance in this matter. I do believe since I am not an Attorney DCORM has ignored my request for payment, even after DCORM wrongfully terminated my claim on 1/25/06. The claim had just been accepted for payment on 1/13/06. There was no new medical information upon which DCORM could base terminating my claim on. The termination letter cited Dr. Smithpeter's IME report; Dr. Smithpeter saw me in his office on 5/05, on just that one occasion. Judge Carney disallowed this report to be entered into evidence. He did not even allow any discussion on this IME report. Dr. Smith's report was not entered into evidence or even discussed in the Administrative Hearing. I saw Dr. Smith on one occasion on 4/05. Therefore, neither of these reports can be used to terminate my claim by DCORM/DCPS. I have seen Dr. Peterson for at least 2 years. My question is whose medical report should have more reliability? The Doctor who has seen you on one occasion or the Doctor who has seen you over the course of 2 years.

I would appreciate my check being sent to me within 24 hours. Please have your office contact me with your resolution concerning this matter.

Sincerely,

*Dr. Margaret Edmonds Deschamps*
Dr. Margaret Edmonds Deschamps
SSN#: 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
(301) 877-9418

*Page 2*



**Mail**   Contacts   Calendar   Notepad

Mail For Mobile · Mail Upgrades · Options

**Check Mail**   **Compose**

Search Mail    Search the Web

Delete    Reply    Forward    Spam    Move...

This message is not flagged. [ Flag Message - Mark as Unread ]    Printable View

**Subject:**   RE: Payment of my Disability Compensation Funds

**Date:**   Fri, 13 Jul 2007 18:55:06 -0400

**From:**   "Rhee, Michelle (OOC)" <Michelle.Rhee@dc.gov>    Add to Address Book    Add Mobile Alert

**To:**   "Margaret Deschamps" <margaretdes@yahoo.com>

Am looking into this for you, any further information you can provide would be great.

**From:** Margaret Deschamps [mailto:margaretdes@yahoo.com]
**Sent:** Friday, July 13, 2007 4:57 PM
**To:** Rhee, Michelle (OOC); margaret deschamps
**Subject:** Payment of my Disability Compensation Funds

7/13/07

Chancellor Rhee:

   Is there anything that you can do to facilitate payment of my Disability Compensation Entitlements that was wrongfully terminated? I have no other funds and I do need my Disability Compensation Entitlements to live off of until I am released to return to work. This is an emergency financial situation could you kindly release my disability payments immediately? Thank you in advance for your assistance.

Sincerely,

Dr. Margaret Deschamps

1 of 2                                                                                                          2/3/2008 1:12 PM

January 21, 2007

To: Ms. Kelly Valentine
    Ms. Johnnie Winslow
    Ms. Nina Hill

From: Dr. Margaret Deschamps
      (M7-BOEDU004895 &
      LTDCPS003752

* According to Judge Kotelly –Kotar and
the DC Appeals Court they indicated ,
where there has been a Due Process Violation
the remedy is reinstatement and to release all
Of claimants back pay and front pay monies
Immediately. I am asking for my check to be
Released with full disability payments,
Reinstatement to the DC Disability Program
and reinstatement with DCPS as I was when
my PTSD Claim was Verbally accepted on
1/13/06.To Do anything contrary to this
Would place your Office in Contempt of Court.

Sub: Due Process Rights Violation due to the fact that (1) I was not given 30 days prior notice, before terminating my PTSD Claim. (2)Also the DC City Council has established That Workman's Compensation Claimants are to be given 30 days Prior Notice before Terminating their Disability Workman's Compensation Claim. Not only that but Judge Carney sent my PTSD Claim back to your office for you to make a Final Determination on my PTSD Claim.  If you check your records you will find that Mr. Robertson placed my claim into a controverted status (3/05), and then he actually told me my claim was denied on the telephone on 6/4/05.  I then requested a Hearing and my PTSD claim was given to Judge Carney to hear my case, he remanded it to your Office on 11/15/05. So I do have a bonafied PTSD claim which was accepted by Ms. Winslow on 1/13/06 and she and Ms. Hill Terminated my PTSD claim on 1/25/06, which was also paid on by your office on 1/25/06. This is the History of my PTSD Claim. (3) My Rights have also been violated because Judge Carney remanded my PTSD claim to your office so that your Office could make a Final Determination on my PTSD Claim.  Your Office did make a Final Determination on my PTSD by a Verbal Acceptance; by Ms. Winslow on 1/13/06. Your Office has been given the power to Verbally Accept a claim by phone.  You can also send out an acceptance letter. Ms. Winslow chose to do a Verbal Acceptance. It is just as Official as if, the acceptance was done by an Official Letter from your Office. Once your Office Terminated my PTSD Benefits which had just been accepted on 1/13/06, and paid on 1/25/06, you were in contempt of Court. Judge Carney's Order stated you were to make a Final Determination on my PTSD claim you did.  Then you Terminated my Acceptance, thereby terminating the Final Determination which Judge Carney had just asked you to make on my claim. Therefore, you are in Contempt of Court in regards to Judge Carney's Order. * How does Housing Certification apply to me that was mentioned in the Lightfoot case by Judge Kotelly-Kotar?

My Letter is based upon the Lightfoot case (2003), 339F.Supp.2d 78.  Citing Judge Kotelly-Kotar's decision.  The Issues are:

(1) I am to receive a specific amount of entitlements if I am totally Disabled versus partially disabled. I have been hospitalized 4 times with PTSD. Dr. Peterson's Dr. Certificate was given to you (sent to Ms. Winslow and Ms. Hill) it indicates that I am not released to return to work yet and I am still under the Doctor's care. My next Doctor's appointment is scheduled for March 13, 2007.

(2) I was not given 30 days prior notice as specified by the Due Process Procedure. A notice was sent to me on 1/25/06 and received on 1/26/06. Where is my 30 days prior notice before terminating my Entitlement?

(3) You were not notified that there was a change in my condition which would warrant your office to terminate or modify my compensation award (entitlements). See DC Annotated Code 1-623.23. As cited in the Lightfoot case.

Once a Benefit modification has occurred based upon additional information (such as a change in the claimants medical condition, Sec. 1-623.24(d)) submitted to your Office by your IME Physicians or the claimants physicians then DC Disability can modify suspend or terminate the claimants Entitlements. If the claimant's condition has not changed then DC Disability can not arbitrarily and capriciously make a change in the claimants Benefits with no change in the claimant's medical condition prompting a review or evaluation of the claimants claim. Thereby terminating the claimants Entitlements with no new medical information submitted to your Office. Question- If there was no change in my medical condition with no new information submitted to your office after 1/13/06, (medical reports) why was my PTSD claim reviewed on 1/25/06 and Terminated on 1/25/06? The IME's were requested by your office in April and May of 2005. You had both Medical Reports in my file (Dr. Smithpeter and Dr. Smith) before you accepted my PTSD claim on 1/13/06. Therefore, with no new information or no new Doctors' reports you arbitrarily and capriciously terminated my PTSD Claim on 1/25/06.

There was no 30 day prior notice given to me prior to Terminating my Entitlements. I was just told by letter on 1/26/06, by a letter dated 1/25/06, that my Workman's Compensation Benefits were terminated. According to the Due Process Procedures, I am to be given 30 days Prior Notice before terminating my Disability Entitlements. My Due Process Rights were violated because your office failed to give me the specified 30 day Prior Notice found in your Due Process Procedures and in the 5th Amendment of the Constitution of the United States.

Judge Kotelly-Kotar stated in the Lightfoot case, No.01-1484, slip opinion, 21, "that the plaintiff's did have a property interest in their Disability Benefits". Therefore, I am entitled to the appropriate Due Process Procedures.

Both the DC Court of Appeals and the Lower Court (Judge Kotelly-Kotar) recognize,"the need for ascertainable, written standards in benefits programs and in government decision making. In Miller v. District of Columbia Board of

*page 2*
*letter*

Appeal and Review, 294 A2d 365 (1972) the Court recognized "the danger of arbitrary Administrative Action based upon unarticulated and unannounced standards." See page 9 of the Lightfoot case.

On page 14, of the Lightfoot case (2003), for a Due Process Violation, the Judge (Ms. Kotelly-Kotar) ordered reinstatement of claimant's benefits including medical. Release my check immediately because:

(1) There was no new information on my medical condition that would Warrant your office to make a new review or a re-evaluate my PTSD claim which would result in Terminating my PTSD Claim. I placed a History of my PTSD claim in the Subject area of this letter starting with Mr. Robertson's verbal denial of my PTSD Claim on 6/4/05. I then requested an Administrative Hearing, on 6/4/05. The medical documents which were cited – Dr. Smithpeter's medical report contained erroneous information. And Dr. Smith's report could not be used to terminate my claim on either as I reported to your office during my Administrative Hearing that I had a reoccurrence of pain in my shoulder and I called your office to report this. Secondly, I placed on my Pre-Hearing Form that I was experiencing shoulder pain and I gave my Pre-Hearing forms to Judge Carney.

My PTSD claim had been reviewed and you made a Verbal Acceptance Order on my PTSD claim on, 1/13/06, with payment following the Acceptance Order on 1/25/06. Ms. Winslow also stated on the phone that my PTSD claim would extend back to my initial injury date of 4/29/03. I have also given your office an updated letter stating my next stated appointment is 3/07. Therefore, my claim should be reinstated and my monies should be released at once – front pay monies and all back pay monies should be released immediately.

I was reading in the Lightfoot case about monies concerning Housing Certification? How does that apply to DC Disability and my Disability Claim? How might I apply for the Housing Certification? Could you please contact me by phone to let me know about the Housing Certification Benefit and follow up with a letter so that I can have something in writing?

Also Ms. Winslow or Ms. Hill, if I have to pay for a Lawyer I will ask to be reimbursed. I feel my Due Process have been violated, and if they had not been violated I would not need a Lawyer. I just need to be treated fairly by DC Disability and they need to release all of my back pay and front pay monies under full Disability Entitlements because I have not been released to return to work yet. If I had tried to return to work I might have had a relapse and have been re-hospitalized. I am doing the best that is humanly possible to get well as soon as possible. Release all of my back pay monies reflecting full disability. If I had been hospitalized 4 times already with PTSD how could I have been able to return to work? My next scheduled appointment date with my Doctor is on: 3/13/07.

*page 3
letter 1/21/07*

*Fax continued / Margaret Deschamps / Ms Kelly Valenta.*
*1/21/07.*

I have submitted partial payment for reimbursement of Therapy supplies that I had to purchase. Thank you for your assistance in releasing my money for reimbursement that I spent out of pocket for necessary therapy supplies. This is not my hospital bill.

* For your records the patient has been disabled from 4/29/03, to 3/13/07, and may not return to work/school. Further disability will Be determined at the Patient's next scheduled appointment on 3/12/07: Diagnosis; PTSD.

Sincerely,

Dr. Margaret Deschamps
(301) 977-9418

*Page 4*
*letter 1/21/07*

Item A

**Dr. Margaret Deschamps**
**P. O. Box 1581**
**Clinton, Maryland 20735**
**(301)877-9418**
**Email:margaretdes@yahoo.com**

5/25/07

**Dear Ms. Hill:**

   **Could you kindly either fax me or email me a copy of a signed medical release from DCORM. I want to request a copy of the IME report done by Dr. Daniel Smithpeter, in 5/05, as soon as possible.**

   **I am still trying to get continued payments on my PTSD claim. Thank you in advance for your assistance. The Doctor is waiting for the signed medical release from DCORM, so that he can release the IME report to me.**

                    **Dr. Margaret Deschamps**
                    **(301) 877-9418**

*Attn. Mr. Howser*



### District of Columbia Public Schools
### Office of Human Resources
825 North Capitol Street, N.E., 6ᵗʰ Floor
Washington, D.C. 20002
(202) 442-4080

## APPLICATION FOR EDUCATIONAL LEVEL PROMOTION

(Print or Type)
Ms.
Miss
Mrs.
Mr. _____

Last                    First             Middle Initial

Address _____

City _____ State _____ Zip Code _____

Home Phone _____ Social Security Number _____

School _____ Cluster _____ Present Position/Grade _____

## I hereby apply for promotion to the educational level indicated below:

_____ Group A-1, _____ Bachelor's degree + 15 graduate semester hours

_____ Group B, _____ Master's degree
              _____ Bachelor's degree + 30 graduate semester hours
              _____ Master's Equivalency (Technical and Industrial Teachers only)

_____ Group C, _____ Master's degree + 30 graduate semester hours

_____ Group D, _____ Master's degree + 60 graduate semester hours (Class 15 only)
              _____ Doctorate degree

*Official transcripts bearing the seal and signature of the registrar **must** be submitted in support of this application.*

Complete this application and return to the:
District of Columbia Public Schools, Office of Human Resources
825 North Capitol Street N.E., 6ᵗʰ Floor, Washington, D.C. 20002

12/26/07

Dear Ms. Orr:

I wanted to take a moment to write to you to let you know my position with DCPS was more than just a Biology Teacher. I did work with the students after school and during school with one club that I did organize and with the SGA. I was a co-sponsor of the SGA at Eastern. This involved developing student skills in organization and as future leaders of the District of Columbia. My Entertainment and Sports Law Club developed students' interest in Law. Specifically the Entertainment and Sports law division. The students learned about copyright laws, and Television. We did go to our local TV stations to see how the TV stations are run. Also to learn how news stories are developed, written and then released to the public by way of the news media. Most importantly, I did not realize it myself but my teaching position encompassed more than just teaching my academic subject to the students. I had started working in the area of Curriculum development. I began developing group activities in which I contributed to the overall improvement of the curriculum of DCPS. I did work in aligning our curriculum frameworks. I developed instructional materials for all DCPS teachers to utilize if they wanted, and assessments to provide a system with clear expectations of what is to be taught and learned.

While working at Woodson Senior High I did work on developing a Cancer Curriculum and Sickle cell Curriculum to be utilized in the District of Columbia Public Schools. I also developed a mini-curriculum for my students to use in Aids Education to be compatible with our Current Biology Textbook that we were using at Eastern Senior High. When I developed or located additional Biology Activity Sheets for my Biology Students to use I did disseminate them to our Biology Staff at Eastern. I have continued to disseminate goals and objectives for the students to utilize in the new DCPS Curriculum. Referred to as Standards of Learning (SOL). I also provided Superintendent Janey with Vocabulary Development terms for grades 7- 12 to assist in elevating the students academic performance on the end of the year National Standardize Exam. This was to help our students compete not only nationally but globally. I read a report that ranked the Countries in the World with student performance academically. I noted how our students from the United States did not achieve as well as other Countries. This was based upon specific test scores that was submitted to the Global Educational Panel comparing each Country's achievement. I submitted vocabulary strategies and vocabulary for Superintendent Janey to implement systemwide (DCPS) so that our students' scores would increase. This information was submitted overall which would include the alignment of curriculum frameworks, with instructional materials, and assessments to provide clear expectations of what is to be taught and learned.

Prior to Superintendent Janey leaving DCPS he had given me a couple of assignments to complete on DCPS' behalf. I was working on a Pre-Engineering Summer Program for our High School Students. This was done with Dr. Janey's approval and he did give me a name of the individual that he wanted me to keep abreast of how I was progressing on this program. Dr. Janey did request that I review the DCPS Curriculum and if I found objectives that were left off to include them. I did just as he requested. Once I had completed this task based upon his

request I emailed the information to him directly. Consequently I knew he considered me as an employee of DCPS. He did authorize payment on my PTSD claim. I did receive a check in excess of $76.000 on 1/25/06. I would appreciate all monies due to me for back pay and front pay Workman's Compensation money be paid to me immediately. Thank you so much for your cooperation.

Sincerely,

Dr. Margaret Deschamps
(301) 877-9418

YAHOO!

Request for release of Workers Compensation back pay and front pay **monies released immediately.**

Thursday, December 20, 2007 11:23 AM

*Appeal sent to Ms. Orr*

Ms. Jackie Orr
Operations Manager of Sedgwick and DCORM
1212 New York Avenue N.E.
Washington, D. C.

Dear Ms. Orr:

Please find supporting documentation indicating that my claim was wrongfully denied using Dr. Smitpeter's medical report which Judge Carney specifically disallowed in his hearing for Ms. Smith to use in attempting to terminate my claim or even discuss it. This same IME medical report was used to terminate me from receiving further monies from DCORM on my PTSD Claim. My PTSD claim was paid on an accepted on 1/13/06, the check was received for payment on this claim on 1/25/06. Without any new or additional medical information on my claim it terminated on 1/25.06. I was not even given any notice prior to terminating my claim on 1/25/06. The claim was terminated upon receipt of my termination letter from your office. This two items alone indicate a due process violation exists on my claim. To terminate my claim without any furhter new or additional medical evidence or a change in my condition, and to terminate my claim without the appropriate 30 days notice according to Judge Kotelly Kotar and DC Statute 1-623 the remedy is to immediately reinstate my claim. I have tried to write repeated letters to Ms. Nina Hill, Ms. Johnnie Winslow, and ms. Valentine but they just ignored me.

I am requesting immediate payment on my claim today. I am asking for late fees on my payments for each year I am due payment under the worker's compensation program from 4/29/03 through 12/20/07. My payments should reflect all current raises, salary increases and bonuses that apply to teachers on my salary level scale with a PhD. I have a permanent Biology position. It was intended by the Administrators at my building that the students lose respect for me due to different treatment that they had given them in failing to discipline the students. I have always performed excellently as a teacher. My students always excelled. I had a few who would fail but not many. I am asking for my check to be released at once. I might add Dr. Janey treated me as if I were an employee of DC PS. I continued to work on small but important educational programs for DC PS while Dr. Janey remained at DC PS. My Doctor had released me part -time to return to work for 15 hours per week. Since I was not given a teaching assignment at that time and I was paid by Dr. Janey on 1/13/06, ()he check was received on 1/125/06, I completed mini projects at my house. Dr. Janey also asked for my assistance on the new DC PS Curriculum that is currently being utilized by Ms. Rhee, and Mayor Fenty. I did add several science objectives on the Science Component of our new DC PS Curriculum.

I am experiencing a hardship I do not have any other income coming in which I can support myself. I need money to pay bills, buy food and to buy Christmas presents for my children just like everyone else is doing at this time. I am requesting immediate continued payments on my claim within 24 hours. Thank you for your assistance in getting my checks to me. Please have the person preparing the checks pay me a check for each year that I have been on the Worker's Compensation Program so that I can make sure I am being paid the correct amount. I was told by one of the representatives that I was paid at 66 2/3% on my claim; it should have been minimally 75% because I did send copies of my W2 from my job and my IRS Tax form showing my dependents. Judge kotelly Kotar stated I should be paid at 100% of my salary. So if I am paid per year if I qualified for a Bonus by coming up with a new idea or some educational strategy that could be utilized by DCPS or if my students performed well or worked with a Club at school that would qualify me for a Bonus. That way I can see if I was paid all of the salary increases , and raises that I was due to receive just as the other teachers on my salary level and salary scale received,



Out of Office AutoReply: Requesting continuation of pay on my claim due to errors by DCORM on my claim.

Friday, December 21, 2007 11:51 AM

I am available by cell if you require immediate assistance. 410-274-8373